THE PEOPLE v. MARGARET C. COOK.

*Criminal law—Soliciting female to enter house of prostitution—*
*Evidence.*

1. Soliciting a female, who is already a prostitute and in a house of ill
   fame, to go into another house of like character, is not an offense
   within the meaning of 3 How. Stat. § 9286, which makes it a
   felony to solicit a female to enter a house of ill fame, resorted
   to for the purpose of prostitution or lewdness, for the purpose of
   *becoming* a prostitute.
2. It is not a necessary element of the crime that the house should
   already have been resorted to for the purpose of prostitution by
   other females, the *gravamen* of the offense being the soliciting
   of females to enter a house of prostitution for the purpose of
   becoming prostitutes,—that is, a house designed and kept for
   that purpose, whether it had already been resorted to by others
   for the like purpose or not.

Error to superior court of Grand Rapids. (Burlingame,
J.)  Argued April 25, 1893.  Decided July 25, 1893.

Respondent was convicted of soliciting certain females to
enter a house of ill fame for the purpose of becoming
prostitutes, and sentenced to confinement in the Detroit
House of Correction for four years.  Judgment reversed,
and new trial ordered.  The facts are stated in the opinion.

*Maher & Salsbury*, for respondent.

*A. A. Ellis*, Attorney General, and *Alfred Wolcott*, Pros-
ecuting Attorney, for the people.

LONG, J.  Respondent was convicted in the superior
court of Grand Rapids, under an information charging
that she did solicit and induce Emma Haehn and
Lillie Pail, females, to enter a house of ill fame, situate at
Woodville, resorted to for the purpose of prostitution and
lewdness, for the purpose of becoming prostitutes.

It appeared that at the term of court at which the respondent was tried, and before her trial came on, one Frank Smith had been prosecuted and convicted under an information charging that he did solicit and induce one Anna Nelson, a female, to enter a house of ill fame in the city of Grand Rapids, resorted to for the purpose of prostitution and lewdness, ·for the purpose of becoming a prostitute; and that Lillie Pail, named in the ·information against respondent, was a witness against said Frank Smith; and also that said Anna Nelson was to be used as a witness against the respondent, her name being indorsed on the information for that purpose. The same panel of jurors remained during the term of court, and several of them who served on the panel in the case against Frank Smith were called in the case against the respondent. Counsel for respondent examined these jurors on *voir dire.* They were asked if they served as jurors in the case of *The People v. Frank Smith,* and heard Lillie Pail testify. This was answered in the affirmative. Counsel then asked:

"Did you, from the evidence in that case, form any opinion as to her character for virtue and chastity?"

The answer, under objection from the prosecution, was excluded. Five jurors who sat in the case of Smith remained on the panel in the present case.

Lillie Pail was called as a witness for the prosecution, and testified substantially that on Sunday, December 12, 1892, the respondent asked her to go to Woodville, into a house of prostitution, to become a prostitute. On the next day she saw the respondent again, who gave her 50 cents to pay her fare and that of Anna Nelson on the train to go there, the respondent at the same time·telling her that other girls were going, and to go to the depot, but not to recognize her there. The witness also testified that before that time she had had illicit intercourse with a man for

pay. This was only a few days before the respondent solicited her to go to Woodville. The testimony tended to show that the house to which the respondent solicited these girls to go was a new one, but the witness Lillie Pail testified that the respondent said it was a sporting house.

The statute under which the prosecution was had reads:

"Every person who shall keep a house of ill fame, resorted to for the purpose of prostitution or lewdness, and every person who shall solicit or in any manner induce a female to enter such house for the purpose of becoming a prostitute, or shall by force, fraud, deceit, or in any like manner procure a female to enter such house for the purpose of prostitution or of becoming a prostitute, shall be deemed guilty of a felony, and, upon conviction thereof, shall be punished by imprisonment in the State prison not more than five years, or in the county jail not more than one year, or by fine not exceeding one thousand dollars, or by both such fine and imprisonment, in the discretion of the court." 3 How. Stat. § 9286.

It is contended by counsel for respondent that the conviction must be set aside for the reasons:

1. That there was no evidence that the house to which these females were asked to go had ever been resorted to for the purpose of prostitution or lewdness.

2. That the words used in the statute, "for the purpose of becoming a prostitute," imply a change of state or condition, and that these females were shown to have already become prostitutes before being solicited.

3. That the testimony did not show that the respondent solicited Lillie Pail to go to this house, and that what was said amounted to nothing more than an inquiry if she would go to a sporting house.

4. That the court erred in permitting the jurors who had formed part of the panel on the trial of Frank Smith to sit in this case.[1]

1. The testimony tended strongly to show that the

---

[1] See *People v. Troy, post,* —, where a challenge for cause was sustained under a similar state of facts.

respondent had prepared this house at Woodville as a house of prostitution, and visited Grand Rapids for the purpose of soliciting females to go there for the purpose of prostitution. It is not a necessary element of the offense that the house should already have been resorted to for such a purpose by other females. The *gravamen* of the offense is in soliciting females to enter such house for the purpose of becoming prostitutes,—that is, a house designed and kept for that purpose, whether it had already been resorted to by others for that purpose or not. If the testimony of Lillie Pail is true, the respondent had prepared a house for the purpose of prostitution,—a "sporting house," as she told the witness.

2. The offense was charged in the language of the statute,—that is, soliciting females to enter a house of ill fame, kept for the purpose of prostitution and lewdness, for the purpose of becoming prostitutes. There was some testimony tending to show that these girls had already entered upon a life of shame, and that when the respondent found them they were then, or had been, inmates of a house of prostitution. The question is therefore presented whether the Legislature intended to create an offense under the statute which should apply to one who solicits a female who is already a prostitute to enter a house of prostitution, and especially where the female so solicited is at the very time an inmate of a house of prostitution. The language of the statute is peculiar: "Every person who shall solicit or in any manner induce a female to enter such house for the purpose of becoming a prostitute," etc. It is contended by counsel for respondent that the word "becoming," as used in this statute, implies a change of state or condition, and that one who is already a prostitute cannot, within the meaning of the statute, become what she already is.

The court, speaking of this subject to the jury, said:

"It is not a question of removing prostitutes from this

city to some other town, to get rid of them. The statute is aimed at the person who is so depraved as to become the go-between between innocent girls and houses of ill fame, or between women and houses of prostitution, by means of solicitation. If the court should charge that the Legislature intended to forgive the person whose business it was to solicit women of pronounced bad character from one· house of ill fame to another (which I shall not charge), then, in such case, it would be a matter of serious deliberation whether Lillie Pail had become such a notorious prostitute, she being a young girl of 17 or 18, and never, so far as the evidence in the case is concerned, had submitted her person to a man until a few days before the alleged solicitation,—as to whether she was what would be termed a common prostitute."

The court had evidently overlooked the testimony of Lillie Pail. She was asked:

"*Q.* What were you doing at this time? What were you employed at,—what work, if any?

"*A.* I was in a sporting house. It would have been a week Monday night that I had been there. Mrs. Cook came on Sunday night. That sporting house was located next door to Nellie Angel's, what was called ' No. 50 East Fulton street.' It was kept by a Mrs. Wilson.

"*Q.* Had you been doing business there, as you call it?

"*A.* Yes, sir.

"*Q.* By ' business ' you mean entertaining men for pay, as sporting women do?

"*A.* Yes, sir.

"*Q.* Having illicit intercourse with men for pay; that is what you mean by ' business?'

"*A.* That is what I mean; yes, sir."

The court in its charge did not direct the jury whether the respondent could or could not be convicted if the girl Lillie Pail was a common prostitute at the time she was solicited to go to Woodville, but left that question an open one, putting the case to the jury upon the theory that the evidence would not warrant them in finding she was a prostitute at that time. The charge was misleading to the jury, and the court should have construed the statute, so that the jury might have such construction as a guide in their

deliberations. There was strong evidence that the girl was a common prostitute, and then actually in a house of prostitution. The clause under which the information was filed makes the offense complete when the solicitation is of females to become prostitutes. Some force must be given to the word "become;" and it is evident that the Legislature did not intend to make the offense complete by the mere soliciting of a female who is already a prostitute, and in a house of ill fame, to go from that place into another house of like character. The next clause of the act makes it an offense to procure a female by force, fraud, deceit, or in any like manner, to enter such a house for the purpose of prostitution. The same statute also punishes in like manner all persons who keep houses of ill fame, resorted to for the purpose of prostitution or lewdness. The court should have directed the jury that if they found the female Lillie Pail to have been a common prostitute, and actually in a house of prostitution, at the time respondent solicited her to go to Woodville, the respondent should be acquitted of the offense charged in the information.

The other questions raised need not be noticed.

Judgment reversed, and new trial ordered.

The other Justices concurred.