PEOPLE v. TYRER

1. COURTS—COURT OF APPEALS—APPEAL AND ERROR.
    The principal function of the Michigan Court of Appeals is to hear all appeals of right from the trial courts of general jurisdiction.

2. COURTS—SUPREME COURT—APPEAL AND ERROR.
    The Supreme Court, in a by-level appellate system, has the power to reconsider every intermediate appellate court decision but it does not have the capacity to do so in terms of manpower and time limitations.

REFERENCES FOR POINTS IN HEADNOTES

[1] 20 Am Jur 2d, Courts §§ 25, 28, 64, 98, 111.
[2] 4 Am Jur 2d, Appeal and Error § 11.
[3] 5 Am Jur 2d, Appeal and Error § 906.

3. APPEAL AND ERROR—APPLICATION FOR LEAVE TO APPEAL—ISSUES
—COURT RULES—DISMISSAL OF APPEAL.

> Appeal should be dismissed as improvidently granted where the application for leave to appeal to the Michigan Supreme Court alleged only one issue to have been of major significance to the jurisprudence of the state, as contemplated by the court rule stating the grounds for granting leave to appeal; only that issue was claimed to have been in conflict with decisions of the Michigan Supreme Court; and there is no conflict between the treatment of that issue by the Michigan Court of Appeals and a decision by the Michigan Supreme Court (GCR 1963, 853.1[1]).

Appeal from Court of Appeals, Division 2, Lesinski, C. J., and Quinn and Danhof, JJ., affirming Oakland, Frederick C. Ziem, J. Submitted April 7, 1971. (No. 7 April Term 1971, Docket No. 52,590.) Decided August 27, 1971.

Appeal from 19 Mich App 48 dismissed.

Valerie Tyrer was convicted of manslaughter. Defendant appealed to the Court of Appeals. Affirmed. Defendant appeals. Appeal dismissed as improvidently granted.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *Thomas G. Plunkett,* Prosecuting Attorney, and *Dennis Donohue,* Chief Appellate Counsel, for the people.

*Douglas Chartrand,* for defendant on appeal.

T. E. BRENNAN, J. The conversion of the Supreme Court from the only appellate court in Michigan to the Court of last resort in a bi-level appellate system was mandated by the Constitution of 1963.

The principal function of the Court of Appeals is to hear all appeals of right from the trial courts of general jurisdiction.

The appellate, as opposed to the superintending role of the Supreme Court is best seen in the provisions of GCR 853.1.

"Rule 853 Appeals from Decisions of Court of Appeals.

".1 Grounds. Appeal may be taken to the Supreme Court only upon application and leave granted, in the discretion of the Supreme Court, from any decision in the Court of Appeals, interlocutory or final, upon a showing of a meritorious basis for appeal and any one of the following grounds:

"(1) The subject matter of the appeal involves legal principles of major significance to the jurisprudence of the State.

"(2) The decision of the Court of Appeals is clearly erroneous and will cause material injustice.

"(3) The decision is in conflict with decisions of the Supreme Court or other Court of Appeals decisions.

"(4) In any appeal of an interlocutory order of the Court of Appeals, it must be shown that appellant would suffer substantial harm by awaiting final judgment before taking appeal."

If a bi-level appellate system is to work, it is necessary for the Supreme Court to resist the temptation, always present among men trained in the law, to become involved in the fascinating work of the trial and intermediate appellate courts.

This is such a case. A murder trial is to the lawyer what opening night is to the thespian or brain surgery is to the medical profession.

Defendant Valerie Tyrer was charged with second-degree murder, tried to a jury, and convicted of manslaughter.

At the close of the proofs, defendant's counsel made a motion to quash the charge of second-degree murder, on the ground that the prosecution had

failed to introduce sufficient evidence from which the jury could find the essential ingredient of malice.

The learned trial judge did not dismiss the motion lightly. His statement from the bench discloses a serious and scholarly weighing of the arguments.

*"The Court:* Well, the Court has carefully considered not only the arguments which have been presented here today, but the arguments which were presented yesterday.

"I took this matter more or less under advisement, although I officially denied the motion, I did it for the purpose of allowing myself time to review the cases which have been presented.

"There's no question that this presents, for the Court, a very serious question and a very close question. I have considered the three recent cases which have been cited, People versus Marshall, 366 Michigan at page 498; People versus Hanson, 368 Michigan, page 344; and People versus Burkard, 374 Michigan, at page 430. And in addition thereto, I —although I'm familiar with the case of Mahar versus the People, cited today, I again reviewed the quotation Mr. Smith recited to the Court in argument today.

"There is no question, if there is not sufficient evidence to allow the case to go to the jury on second degree murder, and in the event there were a conviction on manslaughter, it's my opinion that there would then be reversible error and this matter would have to come back for re-trial, if there were an appeal.

"So the question is raised, whether or not there is evidence from which a jury could reasonably infer the defendant performed with malice, whether there's evidence to justify the conclusion there was intent to kill; another question, is there evidence which would possibly establish an inference in any reasonable person's mind the killing was done with malice aforethought. These are the questions the Court must decide at this time.

"I have considered all the cases which have been cited. As I say, it's a serious and close question. I am particularly impressed with that portion of People versus Burkard, 374 Michigan at page 435, where the Court there, in January of this year, had this to state:

\* \* \*

"The Court, this Court, is of the opinion that due to the fact that there is testimony that the defendant had stated that she was tired of being pushed or chased around; there is testimony that she picked up the knife; and considering the size and character of the knife; further, considering the testimony of Dr. Naz, concerning the downward and inward angle of the wound; further, considering the testimony of Mrs. Burnia, that the defendant told her that she had picked up the knife and thrust it forward as if to push the defendant away; considering all the prior history of trouble between the parties, that is the defendant and the deceased, this Court is of the opinion that, although it's a close question, although it is a serious question, there is sufficient testimony to allow this to go to the jury.

"Therefore, for that reason, the motion is denied."

After sentence, an appeal was taken to the Court of Appeals. That Court's opinion appears in 19 Mich App 48. After treating an issue concerning mention of an offered polygraph test, the appellate panel, speaking through Chief Judge LESINSKI, said this on the malice issue:

"Defendant also contends the trial court erred in denying her motion to quash the charge of second-degree murder (CL 1948, § 750.317 [Stat Ann 1954 Rev § 28.549]), because the evidence did not prove the element of malice. Further, she contends that there was insufficient evidence to support the charge of manslaughter. We disagree with both of these contentions. Upon a review of the record we con-

clude that sufficient evidence was presented from which a jury could conclude that defendant was guilty beyond a reasonable doubt of either second degree murder or manslaughter. There is sufficient circumstantial evidence to raise an issue of fact regarding the existence of malice.[4] The trial court

"[4] For example, medical evidence regarding the angle of the wound and the force involved in the stabbing suggests that malice was involved. Similarly, defendant's malice is suggested in a police officer's testimony that defendant stated: 'He's been pushing me around long enough, I couldn't take it any more.' "

did not err in charging the jury as to second-degree murder and manslaughter.

"Affirmed."

Defendant made application for leave to appeal to this Court. That application states four grounds for appeal. They were:

(a) The Court of Appeals while considering *People* v. *Frechette* (1968), 380 Mich 64, in their decision erroneously minimized [certain] testimony:
* * *

(b) The decision of the Court of Appeals in this case is in conflict with this court's dictum in *People* v. *Frechette.*

"(c) One issue raised on appeal in this matter is an issue not yet presented to this Honorable Court and is one of major significance to the jurisprudence of this State, in that the question will obviously arise many times in lower courts throughout the State and definitive guidance is necessary for the proper functioning of the judicial process, viz. 'Whether the refusal to take a polygraphic examination can be brought into evidence.'

"(d) The Defendant has been most seriously injured in that she has been denied a fair trial according to law and has been convicted of an offense for which she should have been acquitted and would have, had not the errors complained of been made."

Despite the fact that only the polygraph issue was alleged to have been of major significance to our jurisprudence, as contemplated by GCR 1963, 853.1 (1) and despite the fact that only the decision on the polygraph issue was claimed to have been in conflict with this Court's decisions, we granted leave to appeal for an entirely different, and improvident reason.

We granted leave to review the malice issue.

We did so on the strength of an intra-Court memorandum suggesting that we "examine the facts in the instant case and make an analysis as to which case law should be applied."

This suggestion was followed by a learned treatise on the law of malice, citing and distinguishing many of the same cases considered by the trial judge.

In a bi-level appellate system, the Supreme Court has the power to reconsider every intermediate appellate court decision, but it does not have the capacity to do so in terms of manpower and time limitations.

The malice issue here is not a question of first impression. The law of malice, though intricate, is fairly well settled in theory.

Malice questions usually involve, as in this case, some difficulty in applying the law to the facts. Judges often differ on which facts are controlling in deciding whether a jury question has been made out. These are precisely the kinds of issues that intermediate appellate courts are created to resolve. The decision of the Court of Appeals on the malice issue is not alleged to be clearly erroneous. We should not gratuitously find it to be so.

We do not find any conflict between the treatment of the polygraph issue by the Court of Appeals and the holding of this Court in *People* v. *Frechette, supra.*

Leave to appeal was improvidently granted.
This appeal should now be dismissed.

SWAINSON, J., and WILLIAMS, J., concurred with
T. E. BRENNAN, J.

T. M. KAVANAGH, C. J., and BLACK, ADAMS, and
T. G. KAVANAGH, JJ., concurred in the result.