# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

CHRISTOPHER NICHOLAS JONES,

        Defendant-Appellant.

UNPUBLISHED
January 21, 2016

No. 323464
Wayne Circuit Court
LC No. 14-002571-FH

Before: RONAYNE KRAUSE, P.J., and GADOLA and O'BRIEN, JJ.

PER CURIAM.

Defendant appeals as of right his jury trial convictions of third-degree criminal sexual conduct (CSC) (person at least 13 but under 16 years of age), MCL 750.520d(1)(a), and accosting a child for immoral purposes (ACIP), MCL 750.145a. Defendant was sentenced to 3 to 15 years for the CSC conviction, and to one to four years for the ACIP conviction. We affirm in part and remand.

Defendant and the victim, who was 14 years old at the time of the sexual encounter that gave rise to this case, knew each other because defendant was friends with the boyfriend of the victim's mother. Defendant and the victim first started communicating via Facebook and text message. Over the course of less than two months, they exchanged roughly 1,100 text messages, and defendant said "very inappropriate" things. Defendant also sent the victim a photograph of his penis. An identical photograph was later found on a phone owned by defendant. Defendant asked the victim several times to send nude photographs of herself, and she eventually complied by sending him a topless photograph. The victim's friend confirmed that the victim said she was "sexting" with defendant.

The sexual encounter took place at a party at the victim's house. People mostly stayed outdoors during the party, because they were watching a fireworks display. Defendant was sitting next to the victim, outdoors, when he sent her a text message asking her to meet him in the house. She did so. The victim said her pants and underwear "moved a little" to her mid-thigh, but she did not remember how this happened. Then they "ha[d] sex," meaning defendant's penis went inside the victim's vagina. However, the victim also stated that she did not initially know "if it was his finger or if it was his penis" that penetrated her. During this encounter, both defendant and the victim were standing. Defense counsel asked the victim whether her feet were on the floor during the encounter, and she said, "I think so, yes. I don't -- some of the parts that

-1-

[sic] I can't remember." The victim is just under 5 feet tall, while defendant is about 5 feet 9 inches tall.

The encounter ended when the friend came in the house. Defendant walked away without saying anything, and the victim went into the bathroom with her friend. The victim started "peeing blood." She was not menstruating at the time. The friend confirmed that she was in the bathroom with the victim, and there was blood in the victim's underwear.

Later that night, the victim sent a text message to defendant asking, "what did you put inside of me?" She asked because at that point she "wasn't exactly sure if it was a finger -- if it was his finger or if it was his penis." Defendant answered via text message that it was his penis. The friend was with the victim and saw these messages. The friend and the victim then exchanged text messages regarding whether it was possible for the victim to get pregnant.

Defendant testified at trial. He said he never had sex with the victim or flirted with her. He was present at the party, left at around 10:00 p.m. or 10:30 p.m., and he never went in the house. Defendant's girlfriend said that defendant never went into the house during the party.

At sentencing, the trial court scored OV 4 at 10 points, noting that the victim's mother testified that the victim could not sleep by herself, she was more "clingy," more emotional, suffered wild mood swings, and required therapy. The judge scored OV 10 at 10 points, because defendant was a "trusted friend," he "lured" the victim into the house, and committed the criminal acts when nobody else was present. The judge scored OV 12 at one point, finding that defendant engaged in one contemporaneous, felonious criminal act.

Defendant first argues that it was plain error for a prosecution witness to mention that defendant did not keep his appointment to take a polygraph examination, and the error was outcome determinative. Specifically, defense counsel asked the lead detective on the case, "[d]id you ever meet with [defendant] again, [after meeting him once in his driveway]?" The witness replied, "[y]es, actually I did. I asked if he would take a polygraph and, um, he didn't show up." Defendant did not object at the time, so this assertion of error is reviewed for plain error affecting defendant's substantial rights. *People v Coy*, 258 Mich App 1, 12; 669 NW2d 831 (2003); *People v Carines*, 460 Mich 750, 763-764; 597 NW2d 130 (1999). Admitting evidence regarding a witness's refusal to take a polygraph examination is plain error. *People v Kahley*, 277 Mich App 182, 183; 744 NW2d 194 (2007). However, such error does not necessarily require reversal. *Id*. at 183-184. We are not persuaded that this remark was outcome determinative.

In deciding whether an error regarding a polygraph statement affected the outcome of a trial, this Court has considered:

> (1) whether defendant objected and/or sought a cautionary instruction; (2) whether the reference was inadvertent; (3) whether there were repeated references; (4) whether the reference was an attempt to bolster a witness's credibility; and (5) whether the results of the test were admitted rather than merely the fact that a test had been conducted. [*People v Rocha*, 110 Mich App 1, 9; 312 NW2d 657 (1981).]

Defendant did not object, the answer was at least somewhat responsive to a question asked by defense counsel rather than the prosecutor, and no other references were made. The prosecutor was not in control at the time. However, the polygraph reference does tend to cast light on defendant's credibility, which is not allowed. See *People v Mechigian*, 168 Mich App 609, 613; 425 NW2d 199 (1988). Although technically no "results" were admitted, scheduling and then refusing a polygraph seems dangerously close to an implication that defendant had "something to hide."

However, to reverse we must find that this error affected the outcome of the trial. *Carines*, 460 Mich at 763. We note that this case did not involve simply the victim's word against defendant's word; defendant's girlfriend provided corroborating testimony in support of defendant's version of events. There were also additional witnesses who corroborated the victim's testimony. Consequently, this case did not entirely turn on whether the jury found defendant or the victim to be more credible. While mentioning the polygraph test was plain error, we think the significant other evidence in this case precludes that single reference from being outcome determinative. Defendant argues that some parts of the victim's testimony are implausible, such as both of them being "flat-footed" on the floor despite their significant height difference, but that is a distortion of the record; she in fact testified that she did not remember all of it. The evidence overwhelmingly supports the victim's account of what happened and that defendant committed the crimes of which he was convicted. Defendant has not carried his burden of showing that the error was outcome determinative. *Carines*, 460 Mich at 763.

Defendant next argues that his trial counsel performed ineffectively for "failing to object or move to strike the offending testimony." We disagree. It may be sound trial strategy to ignore the admission of inadmissible testimony rather than object and request a curative instruction on the grounds that doing so may well reinforce any prejudicial effect in the minds of the jury. *People v Griffin*, 235 Mich App 27, 37; 597 NW2d 176 (1999), overruled in part on other grounds by *People v Thompson*, 477 Mich 146, 148; 730 NW2d 708 (2007). In any event, even if counsel had been ineffective, reversal on that basis is not warranted unless "there is a reasonable probability that, but for the deficiency, the factfinder would not have convicted the defendant." *People v Snider*, 239 Mich App 393, 423-424; 608 NW2d 502 (2000). As discussed, defendant cannot show that the jury would not have convicted him but for the evidence regarding his refusal to take a polygraph examination. See *Id*.

Finally, defendant argues that the trial court erred in using judge-found facts to decide defendant's minimum sentence. We agree. Because defendant has shown that his guidelines minimum sentence range was calculated on the basis of facts not found by the jury or admitted by defendant, and his sentence was not an upward departure, he is entitled to resentencing unless he advises the trial court that he does not wish to be resentenced. *People v Lockridge*, 498 Mich 358, 395, 398; ___ NW2d ___ (2015).

Defendant was assessed 10 points under OV 4, for "[s]erious psychological injury requiring professional treatment occurred to a victim." MCL 777.34. The victim's mother said the victim was "clingy," had trouble sleeping, suffered from mood swings, and saw a therapist more frequently after defendant victimized her. However, defendant denied committing the crimes altogether, and psychological injury is neither explicitly nor implicitly necessary to either conviction. This offense variable must have been scored contrary to *Lockridge*.

-3-

Defendant was also assessed 10 points for OV 10, where "[t]he offender exploited a victim's physical disability, mental disability, youth or agedness, or a domestic relationship, or the offender abused his or her authority status." MCL 777.40. "'Exploit' means to manipulate a victim for selfish or unethical purposes." MCL 777.40. "'[V]ulnerability' means the readily apparent susceptibility of a victim to injury, physical restraint, persuasion, or temptation." MCL 777.40. The trial judge found defendant was a "trusted friend," he "lured" the victim into the house, and committed the criminal acts when nobody else was present. The jury did necessarily find that the victim was young, and ACIP requires that defendant "accosted, enticed, or solicited" the victim, *People v Kowalski*, 489 Mich 488, 499; 803 NW2d 200 (2011), which plausibly constitutes manipulation. However, neither of defendant's convicted offenses require defendant to have acted for "selfish or unethical purposes." The crimes themselves may seem selfish and unethical on their face, however, that is not contained as an element of either crime, Again, defendant admitted nothing; this offense variable therefore must have been scored contrary to *Lockridge*.

Defendant was assessed 1 point for OV 12, for "[o]ne contemporaneous felonious criminal act involving any other crime." MCL 777.42. The parties agreed on the score for this variable, but the record does not reflect what criminal act was the basis for this score. This OV only includes offenses that "ha[ve] not and will not result in a separate conviction," meaning the ACIP charge cannot have been the basis for this score. MCL 777.42(2)(a)(ii). It does not appear that the jury would have had reason to consider this, and it also does not appear that defendant personally admitted what the other contemporaneous criminal act that would not result in a conviction might have been.

The "threshold showing" for plain error requires that the facts found by the jury or admitted by defendant must be insufficient for the score to "fall in the cell of the sentencing grid under which he or she was sentenced," and the trial court must not have departed upward from the guidelines. *Lockridge*, 498 Mich at 394. The CSC charge, which was used to calculate the guidelines range, is a Class B offense. MCL 777.63. The lower court scored the Prior Record Variables (PRV) at 21, resulting in a PRV level of C. The trial court assessed a total of 21 points for the OVs, which puts defendant at Level II and results in a minimum sentence range of 30 to 50 months. MCL 777.63. Whether or not OV 12 was properly scored, without OV 10 and OV 4, the OVs would have totaled zero or one point, both of which are Level I and result in a minimum sentence range of 24 to 40 months. MCL 777.63. Defendant's minimum sentence of 36 months is not a departure. Defendant is therefore entitled to remand for a determination of "whether that court would have imposed a materially different sentence but for the constitutional error. If the trial court determines that the answer to that question is yes, the court shall order resentencing." *Id.* at 398. However, before deciding this issue, "a trial court should first allow a defendant an opportunity to inform the court that he or she will not seek resentencing." *Id.*

We affirm defendant's convictions, but remand for further proceedings consistent with this opinion. We do not retain jurisdiction.

/s/ Amy Ronayne Krause
/s/ Michael F. Gadola
/s/ Colleen A. O'Brien

-4-