*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

PHILLIP EDWARD DARGA,

Defendant-Appellant.

FOR PUBLICATION
November 16, 2023
9:00 a.m.

No. 363178
Benzie Circuit Court
LC No. 2021-002812-FH

Before: HOOD, P.J., and JANSEN and FEENEY, JJ.

HOOD, P.J.

Defendant, Phillip Edward Darga, appeals by right his conviction, following a jury trial, for one count of accosting a minor for an immoral purpose, MCL 750.145a. Under MCL 750.145a, a defendant may be convicted under one of two theories of criminal liability: (1) "accosting, enticing, or soliciting" or (2) "encouraging." *People v Kowalski*, 489 Mich 488, 499; 803 NW2d 200 (2011). Here, the prosecution charged Darga alternatively under both theories. He was convicted of "accosting, enticing, or soliciting" and not of "encouraging." On appeal, he argues there was insufficient evidence to support his conviction. He also essentially argues that this Court should vacate his conviction because it was impossible for him to accomplish "accosting," "enticing," or "soliciting," since the victim was asleep. We disagree and affirm.

## I. BACKGROUND

This case arises out of a sexually explicit and obscene harangue that Darga directed at EP, a nine-year-old girl. In September 2021, EP and her family were camping at a state forest campground from the Wednesday before Labor Day through the end of the long weekend. Her family was spread across three adjacent campsites. EP and the other children slept in a tent with an adult that was on a site that also had pop-up camper that the children were in and out of during the day.

Darga was staying at a campsite adjacent to one of the campsites that EP's family occupied. Darga originally reserved one night at the campsite, beginning that Thursday. But he extended his reservation, first to Labor Day, and later to that Tuesday. Witnesses testified to seeing Darga

talking to EP and two other children while they were riding their bikes around the campground that Saturday. No one testified to the content of their discussion.

Saturday evening, after dark, Darga entered the campsite where EP was sleeping, approached the pop-up camper that the children had been in and out of during the day, and called, "[EP] come out." He repeatedly called for EP by her first name despite apparently not knowing her prior to that weekend. He then said "[EP] is going to come tonight." After repeatedly calling her name with no response, he returned to his campsite. EP's father testified that he confronted Darga after spotting him peering into the pop-up camper and calling EP's name. EP's uncle convinced the father to leave until the police came.

Sergeant Mark Ketz (Benzie County Sheriff's Office) responded to the family's 911 call and, after speaking with EP's father and uncle, spoke with Darga. He warned Darga about the disturbance. According to Ketz, Darga "admitted he was probably being a little too loud" and promised to be quiet. Sergeant Ketz then pretended to leave the campground, when in fact, he drove approximately 100 yards away, parked, and walked back to Darga's campsite on foot.

After Sergeant Ketz appeared to leave, Darga again started to make loud, obscene comments about EP. As he was walking back, Sergeant Ketz "could already hear shouting," and when he was within 50 feet of Darga's campsite, he heard Darga "shout 'I'm going to stick a brush in her pussy.' " He also heard Darga shouting " 'She comes tomorrow' " three times. Likewise, EP's father testified that Darga was walking and pacing around his campsite and speaking loudly enough for "like half the campground probably" to have heard him. He specifically recalled hearing Darga say that EP was "going to come tonight" and that "she was going to have an orgasm." EP's uncle testified that Darga chanted " '[EP] is going to come today, [EP] is going to orgasm tomorrow, [EP] is going to come tomorrow.' " Relevant to this appeal, aside from Darga's first imperatives that directed EP to "come out," the statements were largely in the third person (i.e., "[EP] is going to come tonight," "[EP] is going to orgasm tomorrow," "I'm going to stick a brush in her pussy," etc.). The parties stipulated that EP was asleep during Darga's comments.

Sergeant Ketz confronted Darga again, interrogated him about the comments, and with the assistance of another officer arrested him. Sergeant Ketz recorded part of the interaction, which the prosecution played for the jury. During the interrogation, Darga did not deny making the statements, provided no explanation for them, questioned the statements' meaning, and claimed he was sleeping. Another responding officer saw both a wire brush suitable for cleaning grills and a hairbrush at Darga's campsite. The officers took photos (which the prosecution presented at trial) and arrested Darga.

The prosecution charged Darga with a single count accosting a child for immoral purposes, MCL 750.145a. From the beginning of the case, Darga maintained that it was impossible for him to have committed the crime of accosting a minor for immoral purposes because EP had been asleep during the incident. The district court rejected these arguments at the preliminary hearing, and the trial court rejected a variant of these arguments that Darga raised in a motion to quash.

Although the prosecution charged a single count of MCL 750.145a, it charged Darga under both theories of liability: (1) accosting, enticing, or soliciting, and (2) encouraging. See MCL 750.145a. See also *Kowalski*, 489 Mich at 498-501. The trial court therefore prepared a jury

instruction that instructed the jury on the elements under both theories as reflected in the model jury instruction. See M Crim JI 20.40. It also prepared a special instruction that defined essential terms contained within the model instruction. Ostensibly accepting the defense's argument that favored using lay dictionary definitions from *Webster's Dictionary* over definitions contained in *Black's Law Dictionary*, the Court instructed the jury on definitions with the model instruction as follows:

> Accost means to approach and speak to someone in an often challenging or aggressive way. Merriam Webster's College Dictionary, 11th Edition.

> Entice means to attract artfully or adroitly, or by arousing hope or desire. Merriam Webster's College Dictionary, 11th edition.

> Solicit means to approach with a request or a plea, to urge strongly, or to entice or lure, especially into evil. Merriam Webster's College Dictionary, 11th edition.

> Encourage means to inspire with courage, spirit or hope; to attempt to persuade. Merriam Webster's College Dictionary, 11th edition.

> Induce means to move by persuasion or influence; to call forth or bring about by influence or stimulation. Merriam Webster's College Dictionary, 11th edition.

The prosecution and defense approved these definitions. Both sides also approved the special instructions and verdict form that covered both theories of liability. With one count, the jury considered two separate sets of elements.

The jury convicted Darga under the "accosting, enticing, or soliciting" theory, not the "encouraging" theory. The trial court sentenced Darga to 34 months to 15 years in prison, as a fourth-offense habitual offender. This appeal followed.

## II. STANDARD OF REVIEW

We review de novo questions of statutory interpretation and issues relating to the sufficiency of evidence. *People v Isrow*, 339 Mich App 522, 526; 984 NW2d 528 (2021) (quotation marks and citation omitted). Determining the elements of a crime set forth in a statute presents a question of statutory interpretation that is reviewed de novo. *Kowalski*, 489 Mich at 497-498. When reviewing a claim of insufficiency of the evidence, the reviewing court must consider the evidence in the light most favorable to the prosecution, and consider whether there was sufficient evidence to justify a rational juror finding guilt beyond a reasonable doubt. *People v Oros*, 502 Mich 229, 239; 917 NW2d 559 (2018). In doing so, we must draw all reasonable inferences and make all credibility assessments in favor of the jury's verdict. *Id*. This review applies equally to direct and circumstantial evidence. *Id*. "Circumstantial evidence and reasonable inferences arising from the evidence can constitute satisfactory proof of the elements of a crime." *Id*., quoting *People v Nowack*, 462 Mich 392, 400; 614 NW2d 78 (2000).

## III. LAW AND ANALYSIS

## A. ELEMENTS OF MCL 750.145A

At the threshold, we observe that the trial court correctly instructed the jury on the elements of MCL 750.145a, including its reliance on the ordinary dictionary definition of "accosts," "entices," or "solicits," which the statute does not define.

> The overriding goal of statutory interpretation is to ascertain and give effect to the Legislature's intent. The touchstone of legislative intent is the statute's language. The words of a statute provide the most reliable indicator of the Legislature's intent and should be interpreted on the basis of their ordinary meaning and the overall context in which they are used. An undefined statutory word or phrase must be accorded its plain and ordinary meaning, unless the undefined word or phrase is a term of art with a unique legal meaning. [*People v DeBono*, ___ Mich App ___, ___; ___ NW2d ___ (2023) (Docket No. 362041); slip op at 3 (quotation marks and citation omitted).]

"Nontechnical words and phrases should be interpreted according to the common and approved usage of the language." *People v Rea*, 500 Mich 422, 428; 902 NW2d 362 (2017) (quotation marks and citation omitted). This means "we may consider dictionary definitions to discern the Legislature's intent." *Kowalski*, 489 Mich at 500 n 13.

MCL 750.145a provides:

> A person *who accosts, entices, or solicits* a child less than 16 years of age, regardless of whether the person knows the individual is a child or knows the actual age of the child, or an individual whom he or she believes is a child less than 16 years of age with the intent to induce or force that child or individual to commit an immoral act, to submit to an act of sexual intercourse or an act of gross indecency, or to any other act of depravity or delinquency, *or who encourages* a child less than 16 years of age, regardless of whether the person knows the individual is a child or knows the actual age of the child, or an individual whom he or she believes is a child less than 16 years of age to engage in any of those acts is guilty of a felony . . . . [Emphasis added.]

Our Supreme Court interpreted this statute as providing two ways that a defendant may commit this crime (and two theories under which the prosecution may charge them). *Kowalski*, 489 Mich at 499. As stated above, the prosecution charged Darga under both theories. Under the first theory of criminal liability ("accosting," "enticing," or "soliciting"), the prosecution must prove that the defendant "(1) accosted, enticed, or solicited (2) a child (or an individual whom the defendant believed to be a child) (3) with the intent to induce or force that child to commit (4) a proscribed act." *Id.*;[1] see also MCL 750.145a. Under the second theory ("encouraging"), the prosecution must prove that the defendant "(1) encouraged (2) a child (or an individual whom the

---

[1] Here, "proscribed act" refers to an "act of sexual intercourse," "an act of gross indecency," or "any other act of depravity or delinquency." See MCL 750.145a. The statute does not specially define any of these acts. These definitions are not at issue in this case.

defendant believed to be a child) (3) to commit (4) a proscribed act." *Kowalski*, 489 Mich at 499; see also MCL 750.145a. Thus, "[t]aken as a whole, the statute permits conviction under two alternative theories, one that pertains to certain acts and requires a specific intent and another that pertains to encouragement only and is silent with respect to *mens rea*." *Kowalski*, 489 Mich at 499. Under the first theory, if the defendant has "committed acts of accosting, enticing, or soliciting, the statute requires the prosecution to demonstrate a specific intent to induce or force the child to commit proscribed acts; it is not enough for the prosecution to merely establish that the defendant committed acts of accosting, enticing, or soliciting." *Id*. at 500. It is therefore a specific intent crime. *Id*. at 500-501. Conversely, the "encouraging" theory is a general intent crime. *Id*. at 499-500. As stated, only the first theory is at issue in this appeal.

Critical to Darga's sufficiency-of-the-evidence argument is the meaning of "accost," "solicit," or "induce," which the statute does not define, and which neither our Supreme Court, nor this Court (in a published opinion) have construed. See *Kowalski*, 489 Mich at 499-500 (interpreting "encourage" as used in the second theory of liability not at issue in this appeal). But see *People v Brower*, unpublished per curiam opinion of the Court of Appeals, issued May 18, 2010 (Docket No. 286551), p 2.

We adopt the ordinary definitions of "accost," solicit," or "induce," that the trial court used to instruct the jury on the first theory of liability. This conclusion is consistent with our Supreme Court's analysis in *Kowalski*. See *Kowalski*, 489 Mich at 500, 500 n 13. In *Kowalski*, our Supreme Court relied on the ordinary dictionary definition of "encourage" when construing the meaning of the alternate theory of liability under MCL 750.145a. See *Kowalski*, 489 Mich at 500, 500 n 13. Although this case involves definitions of "accost," "solicit," or "induce," under the first theory of liability, we find no error in the trial court relying on the ordinary dictionary definitions of these terms to instruct the jury. See *id*. This is also consistent with our Court's prior—albeit unpublished—decisions construing the terms of MCL 750.145a. *People v Campbell*, unpublished per curiam opinion of the Court of Appeals, issued November 23, 2021 (Docket No. 353690), pp 5-6 (Relying on Merriam-Webster's College Dictionary definition of "accost," "entice," and "solicit" to conclude that there was sufficient evidence to support conviction under MCL 750.145a); *People v Markovich*, unpublished per curiam opinion of the Court of Appeals, issued July 14, 2015 (Docket No. 320982), p 2 (same). See also *People v Holbrook*, unpublished per curiam opinion of the Court of Appeals, issued October 25, 2011 (Docket No. 298869), pp 6-7 (relying on Random House Webster's College Dictionary definitions of "accost" entice" and "solicit" to conclude there was sufficient evidence to support conviction under MCL 750.145a); *People v Brower*, unpublished per curiam opinion of the Court of Appeals, issued May 18, 2010 (Docket No. 286551), p 2 (same).[2]

The trial court provided the following definitional instructions to the jury:

---

[2] Though unpublished cases are nonbinding on this Court, they may be persuasive or instructive. See *People v Parkinson*, ___ Mich App ___, ___ n 3; ___ NW2d ___ (2023) (Docket No. 362683); slip op at 6 n 3.

-5-

Accost means to approach and speak to someone in an often challenging or aggressive way. Merriam Webster's College Dictionary, 11th Edition.

Entice means to attract artfully or adroitly, or by arousing hope or desire. Merriam Webster's College Dictionary, 11th edition.

Solicit means to approach with a request or a plea, to urge strongly, or to entice or lure, especially into evil. Merriam Webster's College Dictionary, 11th edition.

Encourage means to inspire with courage, spirit or hope; to attempt to persuade. Merriam Webster's College Dictionary, 11th edition.

Induce means to move by persuasion or influence; to call forth or bring about by influence or stimulation. Merriam Webster's College Dictionary, 11th edition.

It appears both parties tacitly accept these definitions. We find no error in the trial court relying on the ordinary dictionary definitions of these terms to instruct the jury. See *Kowalski*, 489 Mich at 500 n 13.

## B. SUFFICIENCY OF THE EVIDENCE

Relying on these definitions, we conclude that the prosecution presented sufficient evidence of Darga's guilt. A challenge to the sufficiency of evidence underpinning a conviction implicates due process. "Due process requires that a prosecutor introduce evidence sufficient to justify a trier of fact to conclude that the defendant is guilty beyond a reasonable doubt." *People v Tombs*, 260 Mich App 201, 206-207; 679 NW2d 77 (2003), aff'd 472 Mich 446 (2005). The prosecutor "is not obligated to disprove every reasonable theory consistent with innocence to discharge its responsibility; it need only convince the jury 'in the face of whatever contradictory evidence the defendant may provide.' " *Nowack*, 462 Mich at 400, quoting *People v Konrad*, 449 Mich 263, 273 n 6; 536 NW2d 517 (1995). We draw all reasonable inferences and credibility choices in support of the jury's verdict. *Oros*, 502 Mich at 239.

As stated, the "accosting, enticing, or soliciting" theory of MCL 750.145a has three elements. *Kowalski*, 489 Mich at 499. Here, that required evidence: first, that Darga accosted, enticed, or solicited EP; second, that EP was less than 16 years old (or an individual whom Darga believed to be less than 16 years old); and third, that when Darga accosted, enticed, or solicited EP, it was with the intent to induce or force EP to commit an act of sexual intercourse, gross indecency, or any other act of depravity or delinquency. *Kowalski*, 489 Mich at 499; see also MCL 750.145a. Here, the second element, EP's age, is not in dispute.

Regarding the first element, there was sufficient evidence that Darga accosted, enticed, or solicited EP. Relying on the ordinary meaning of these words described above, a reasonable juror could find that Darga's statements in isolation or in combination satisfied the definitions of "accosting," "enticing," or "soliciting." Even Darga's initial approach was sufficient to establish the first element. Darga called EP by her first name, directed her to come out on the promise that she was going to "come" or "orgasm" that night. This is "accosting" because Darga was speaking

-6-

in a challenging and aggressive way. It was "enticing" because, as absurd and offensive as the comments were, a reasonable juror could conclude Darga made the comments to "attract . . . by arousing hope or desire" in the sexual acts that he described. Finally, it was "soliciting" because it was a plea "to urge strongly" for her to join him in the sexual acts. Here, using the definitions from the trial court—which we now adopt—the prosecution satisfied the first element.

Regarding the third element, intent, there was sufficient evidence that Darga made these statements with the intent of inducing or forcing EP to engage in sexual intercourse, gross indecency, or another proscribed act. A juror may infer intent from circumstantial evidence. *Oros*, 502 Mich at 239. Because a juror cannot look into a defendant's mind, they often must rely on circumstantial evidence to determine intent. See *id.* To that end, though stated in the context of general intent, a jury may presume that a person "intend[ed] the natural consequences of" their actions. *Kowalski*, 489 Mich at 500 (quotation marks and citation omitted).

Here, the prosecution presented evidence that the day of the sexual harangue, Darga was interacting with EP and other children when they were not with adults. It is reasonable, and almost inescapable, to infer that Darga learned EP's name during those interactions. It is also largely undisputed that Darga came to EP's family's campsite—specifically the campsite where the children had been playing during the day—and repeatedly called EP by her first name, directing her to "come out." These facts create a reasonable inference that Darga intended for EP to come out at night and join him. Without more, these facts might be insufficient to establish the necessary intent for MCL 750.145a on an "accosting, enticing, or soliciting" theory. See *People v Pippin*, 316 Mich 191, 193-194; 25 NW2d 164 (1946) (interpreting an earlier version of the accosting statute, our Supreme Court implied that inviting a minor to get into a vehicle might show that a defendant intended for the minor to get into his vehicle, but by itself was insufficient to establish any other intentions beyond that). But Darga did not just beckon EP to come out and join him.

The circumstances of his conduct and subsequent statements allow a reasonable juror to infer that the intent behind "[EP] come out" was to coax EP to come out so Darga could sexually assault her. Although EP's family staying at campsites adjacent to Darga's appears to have been by chance, Darga chose to extend his stay. During that extended stay, he learned EP's name when no adults were around. After dark, he snuck across the family's campsites to reach the area where he expected EP to be, as she and the children were playing their earlier in the day. The evidence allows the inference that Darga used his knowledge of EP's name, approached her location after (albeit mistakenly) checking there were no adults in the area, and asked her to come out with the promise of what he apparently thought would be an enjoyable experience: EP coming, orgasming, or being sexually assaulted with a brush. When we consider this conduct in light of the totality of the circumstances, a reasonable juror could infer that Darga asked EP to come out because he intended to engage in sex acts with her. His extensive and loud yelling about EP orgasming involving a brush, and the fact that brushes were found readily available at Darga's campsite, might not be proof of anything alone, but in context, they further support such an inference about Darga's intent. Thus, the prosecution presented sufficient evidence of each of the three elements.

## C. ACTUS REUS AND IMPOSSIBILITY

In addition to Darga's sufficiency-of-the-evidence claim, he distinctly argues that the Court should vacate his conviction because under the circumstances it was impossible for him to violate

MCL 750.145a. Darga argues that because there was no evidence that the victim was awake or even close enough to hear Darga speaking he could not be guilty of MCL 750.145a. We disagree. Darga couches his argument in terms of "*actus reus*,"[3] but his argument borders on a factual impossibility argument. Both arguments fail.

Darga's argument misconstrues the requirements of MCL 750.145a as described above. "Accosting," "enticing," or "soliciting," under MCL 750.145a is an inchoate offense, which is to say a defendant's conduct may satisfy the elements even when his intended outcome is impossible. Contrary to Darga's argument, the *actus reus* is complete when a defendant engages in an effort to persuade a child to engage in an immoral act, irrespective of whether a child does or is even aware of the defendant's efforts.

As stated above, we adopt the ordinary dictionary definitions of "accost," "entice," and "solicit," but these definitions are a tool, rather than the totality, of our analysis. *In re Erwin Estate*, 503 Mich 1, 19-21; 921 NW2d 308 (2018). We must consider the terms in context of each other and the broader statutory scheme. *People v Tadgerson*, ___ Mich App ___, ___; ___ NW2d ___ (2023) (Docket No. 360094); slip op at 4-5. When we consider "accost," "entice," and "solicit" in the context of each other, we understand them as proscribing conduct of the person doing the accosting, enticing, or soliciting, rather than proscribing the effect on the intended victim. More importantly, each word (informing the other) connotes an effort or attempt at persuasion.

This conclusion is consistent with this Court's decisions construing other sections of the penal code that cover similar conduct. For example, when interpreting MCL 750.157c (prohibiting recruiting or inducing a minor to commit a felony, commonly the "inducement" statute),[4] this Court held that the word " 'solicit' does not require any commitment or action by the minor being solicited" and merely "means to ask." *People v Pfaffle*, 246 Mich App 282, 298; 632 NW2d 162 (2001). When interpreting MCL 750.455 (prohibiting procuring a person to engage in prostitution, commonly the "pandering" statute),[5] this Court has held that the words "encourages" and "entices" indicated a Legislative intent to punish efforts to persuade a victim to become a prostitute irrespective of whether those efforts were successful. *People v Rocha*, 110 Mich App 1, 14-15;

---

[3] On appeal, Darga uses the term "actus reus." Latin for "guilty act," *actus reus* is merely the "wrongful deed that comprises the physical components of a crime . . . ." *Black's Law Dictionary* (11th ed). Generally it must be coupled with mens rea to establish criminal liability. See *id*. See also *People v Likine*, 492 Mich 367, 393; 823 NW2d 50 (2012).

[4] MCL 750.157c provides, "A person 17 years of age or older who recruits, induces, solicits, or coerces a minor less than 17 years of age to commit or attempt to commit an act that would be a felony if committed by an adult is guilty of a felony . . . ."

[5] At the time this Court interpreted MCL 750.455 in *People v Rocha*, 110 Mich App 1, 14-15; 312 NW2d 657 (1981), MCL 750.455 provided in relevant part, "Any person . . . who shall induce, persuade, encourage, inveigle or entice a female person to become a prostitute . . . shall be guilty of a felony . . . ."

312 NW2d 657 (1981).[6]  Likewise, MCL 750.145a requires proof that a defendant had the "intent to induce or force" a child to commit an immoral act, but it does not require that a defendant succeed (or even that the intended target is aware).

Though not explicitly addressed, this conclusion is also consistent with our Supreme Court's holding in *Kowalski*.  *Kowalski*, 489 Mich at 500.  There, the Court held that there must be sufficient evidence that a defendant *intended* for certain immoral acts to occur.  *Id*.  This implies that the immoral acts *actually* occurring is not necessary.  *Cf. id*.  See also *Pippin*, 316 Mich at 193-194 (holding when interpreting the predecessor to MCL 750.145a that the *mens rea* of accosting a minor for an immoral purpose was not established by the defendant merely inviting a minor into his car, but implying that the *actus rea* might be satisfied by doing so).

Relying on the above definitions and these authorities, we conclude that the "accosting, enticing, or soliciting" theory of accosting a minor for an immoral purpose under MCL 750.145a is an inchoate crime.  The *actus reus* of this crime is complete when a defendant engages in certain conduct with the specific intent to cause the outcome of a minor engaging in an act proscribed by the statute.  The success or failure of the intended act is irrelevant.  By extension, if the outcome of a defendant's act is irrelevant to whether the defendant violated MCL 750.145a, the victim's awareness or knowledge of the intended outcome is also irrelevant.  Put another way, it does not matter whether a defendant comes face-to-face with his intended victim or if the victim ever hears him.

Here, the *actus reus* was satisfied when Darga went to the campground and called out sexual and lascivious phrases at a campsite where he thought the minor would hear him.  The evidence establishing Darga's *actus reus* and the evidence establishing his *mens rea*, namely the circumstances and content of the phrases he spoke, are inseparably intertwined.  The fact that he had the wrong campsite at first and that the victim was asleep throughout is irrelevant.[7]  His bad conduct was firmly established and linked to his intent.

---

[6] Although *Rocha* is not strictly binding pursuant to MCR 7.215(J)(1) because it was issued before November 1, 1990, as a published opinion, it nevertheless "has precedential effect under the rule of stare decisis" pursuant to MCR 7.215(C)(2). See *Wells Fargo Rail Corp v Dep't of Treasury*, ___ Mich App ___, ___; ___ NW2d ___ (2022) (Docket No. 359399); slip op at 10 n 2.

[7] As stated above, without using the word "impossible," Darga effectively also appears to argue that there was insufficient evidence because his crime was factually impossible, or more accurately, hybrid-legally impossible.  See *People v* Meyers, 250 Mich App 637, 644-645; 649 NW2d 123 (2002).  This argument, that Darga intended a result but was thwarted due to circumstances unknown to him or outside of his control (namely, that the victim was asleep or incapable of hearing him), fails for two reasons.  First, *Meyers*, the case on which Darga relies for his backdoor hybrid-legal-impossibility argument dealt with the prior version of MCL 750.145a, which required accosting a child under the age of 16.  See *id*. at 639-640 (citing prior version of MCL 750.145a).  Shortly after that decision, the Legislature amended and broadened the statute to include accosting a child under 16 years of age *or* accosting "an individual whom [the defendant] believes is a child less than 16 years of age . . . ."  See 2002 PA 45 amending MCL 750.145a,

## IV. CONCLUSION

For these reasons, we affirm Darga's conviction for accosting a minor under MCL 750.145a.

/s/ Noah P. Hood
/s/ Kathleen Jansen
/s/ Kathleen A. Feeney

---

effective June 1, 2002. Under the amended statute, it does not matter if the individual actually accosted a child. Second, even without this amendment, it is likely that the portion of *Meyers* on which Darga relies is not dictum. See *People v Peltola*, 489 Mich 174, 190 n 32; 803 NW2d 140 (2011). See also *Meyers*, 250 Mich App at 644-645 (commenting on defendant's hybrid legal impossibility argument for his underlying conviction for MCL 750.145a while addressing appeal of defendant's sentence for failing to register as a sex offender, pursuant to the Sex Offender Registration Act, MCL 28,721, *et seq*.). Finally, our Supreme Court has yet to accept such an argument as a defense to MCL 750.145a. See *People v Thousand*, 465 Mich 149, 158; 631 NW2d 694 (2001). Ultimately, the fact that Darga was unsuccessful at getting EP to hear his overtures has no bearing on the elements, i.e., whether he made the accosting statements, and the circumstances under which he made the accosting statements.